# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:07-CR-263 |
| v. : | |
| : | (Chief Judge Kane) |
| BARRON WALKER and : | |
| BARRY WALKER : | |

## MEMORANDUM

Pending before the Court is Defendants Barron and Barry Walkers' joint motion for a new trial on the grounds that the prosecution's failure to disclose certain impeachment evidence regarding one witness prejudiced their defense at trial. Following due consideration, the motion will be denied because although the government should have made the impeaching material available to counsel prior to trial, the failure to do so was not sufficiently material to undermine confidence in the jury's verdict.[1] Accordingly, the motion will be denied.

## I.   PROCEDURAL BACKGROUND

On June 27, 2007, a grand jury issued a four-count indictment charging Barry Walker and Barron Walker with the following crimes: (1) possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a); criminal conspiracy, in violation of 21 U.S.C. § 846; possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). On July 10, 2007, Barry Walker escaped from custody and a warrant was issued for his arrest. He was arrested two days later in York, Pennsylvania, where he was found in possession of an additional quantity of cocaine base. On July 17, 2007, a grand jury issued a superseding

---

[1] The Court agrees with defense counsel's representation that a hearing on the motion is unnecessary, (Doc. No. 241, at 6.), as there is no dispute that the government withheld impeachment evidence from Defendants.

indictment adding two counts against Barry Walker charging him with escape from custody, in violation of 18 U.S.C. § 751(a), and an additional count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a).

On November 7, 2007, a grand jury issued a second superseding indictment charging both Barry Walker and Barron Walker with interference with interstate commerce through robbery, in violation of 18 U.S.C. § 1951(a) (the "Hobbs Act"), and with using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).[2]

The Court presided over a jury trial on the above charges from August 11, 2008, through August 14, 2008. At the conclusion of the trial, the jury returned a verdict finding the defendants guilty of the Hobbs Act robbery and possession of a firearm in furtherance of the Hobbs Act robbery. The jury also found both defendants guilty of possession with intent to deliver cocaine base and possession of a firearm in furtherance of cocaine base distribution, relating to the time period prior to May 31, 2007. The jury further found Barry Walker guilty of escape and of possession with intent to deliver cocaine base relating to this arrest on July 12, 2007.[3]

---

[2] The Hobbs Act and related weapons charge arose out of the May 31, 2007, shooting death of John McNeil during the course of an attempted armed robbery of a drug trafficker on the 1700 block of Carnation Street in Harrisburg, Pennsylvania. Several witnesses testified at trial that Barry Walker and Barron Walker facilitated and participated in this attempted robbery, along with James Leaks, Jason McNeil, and John McNeil.

[3] Following the jury's verdict, the United States withdrew the charge of possession by a firearm by a prohibited person set forth in Count IV of the indictment.

## II.     POST-TRIAL DISCLOSURE OF IMPEACHMENT EVIDENCE

Following trial, then-Special Assistant United States Attorney Michael A. Consiglio informed defense counsel that the government had failed to produce certain impeaching evidence relating to Skylar Rhoades, one of the government's principal witnesses at trial.[4] In his letter, dated September 3, 2008, AUSA Consiglio advised counsel as follows:

> As you recall, Skylar Rhoades previously worked as a confidential informant with ATF and other law enforcement agencies. In the winter of 2006-2007, Agent Chad Sines from ATF and Trooper Craig Ammons from the Pennsylvania State Police were arranging with Rhoades to purchase an ounce or more of crack cocaine from a target. Before the purchase, the officers asked Rhoades to change the coat he was wearing because it would interfere with audio recording they planned to conduct. Trooper Ammons recovered a coat from the trunk of Rhoades car and searched the pockets. In a pocket, they found flakes of what appeared to be marijuana and a small piece of what appeared to be cocaine base. These materials were not packaged in any way and the materials appeared old. Rhoades explained that it was an old coat and that he did not realize these remnants were present. The cocaine did field test positive for being cocaine. Rhoades was not charged with any crimes for this incident.

(Doc. No. 223, Ex. 3.) Following review of this letter, Defendants jointly moved for a new trial on the grounds that their post-trial receipt of information about Skylar Rhoades being in possession of narcotics while working as a government informant prejudiced their defense. Specifically, Defendants contend that the withheld evidence could have been used to impeach Rhoades by suggesting the following inferences: "(1) that Skylar Rhoades was preparing to frame someone through an undercover buy by producing this crack cocaine to the authorities after the buy and claiming he purchased it; (2) that Skylar Rhoades was dealing and/or using

---

[4] Subsequently, Mr. Consiglio joined the United States Attorney's Office as an Assistant United States Attorney.

drugs contemporaneously while acting as a government informant and got caught; and (3) that as part of the consideration provided in exchange for his cooperation, there was a decision not to prosecute him for this crack cocaine violation." (Doc. No. 234, at 8.) In addition, Defendants argue that because Rhoades testified that he had not sold or used drugs during the period he was working as a government informant following his 2006 arrest, the failure of the government to disclose the fact of his drug possession materially undermined their ability to impeach Rhoades at trial. Specifically, Defendants' motion concerns the first three counts of the indictment charging Defendants with crack cocaine distribution and possession of a firearm to facilitate drug trafficking. Defendants argue that Rhoades was "the only witness producing any direct evidence against Barron and Barry Walker on the first three counts of the trial indictment," and therefore his credibility was essential to the government's success at trial in proving these crimes. (Doc. No. 234, at 3.) The government opposes the motion, maintaining that the impeachment evidence was not material but instead was merely cumulative of the substantial impeachment evidence directed towards Rhoades at trial.

### III. DISCUSSION

In United States v. Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The Brady rule applies to the disclosure of impeachment evidence. Giglio v. United States, 405 U.S. 150, 154 (1972). A Brady violation has three separate elements: (1) the evidence must be favorable to the defendant; (2) it must have been suppressed by the prosecution; (3) and it must have been material to either guilt or punishment.

4

United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005); United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991). Evidence is considered to be material for Brady purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985); United States v. Reyeros, 537 F.3d 270, 281 (3d Cir. 2008). The Supreme Court has further explained Brady's materiality prong as follows:

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678).

In this case, the government concedes the first two elements of Brady by acknowledging that it was obligated to provide the evidence regarding Rhoades's possession of drugs to the defense and that the evidence could have been used for impeachment purposes. However, the government maintains that the failure to turn the evidence over does not constitute a Brady violation – and, hence, that Defendants are not entitled to a new trial – because the evidence was not material to Defendants' guilt on counts one, two, or three. Upon careful consideration, the Court agrees.

As an initial matter, Defendants' motion is predicated in large part upon their contention that Skylar Rhoades provided the only substantial testimony to support Defendants' conviction on the first three counts of the indictment charging them with drugs and weapons violations. However, during the trial, the United States elicited testimony from witnesses other than Skylar

5

Rhoades who testified regarding Defendants' drug trafficking activity, although the Court agrees that this testimony was relatively thin. For example, Carmillia King, Barry Walker's girlfriend, testified that Barry Walker sold cocaine in order to make money during the period around May 31, 2007. (Trial Transcript, at 202-03) (hereafter "Tr. _".)[5]

Jason McNeil, a co-defendant and the brother of John McNeil, who was killed during the failed robbery attempt, testified that Defendants sold crack cocaine throughout Harrisburg, that he had witnessed Defendants sell cocaine at "random spots" in Harrisburg five to ten times within a one-week to one-month period prior to May 31, 2007, and that he was in a vehicle with Defendants while these sales took place. (Tr. 300-01; 316-17.)

In addition to, and in corroboration of, the foregoing testimony regarding Defendants' drug trafficking activity prior to May 31, 2007, the government relied on the testimony of Skylar Rhoades in order to prove the drug and weapons offenses charged in Counts 1, 2, and 3.[6] Mr.

---

[5] The Court notes that Ms. King's testimony at trial was especially limited regarding Barry Walker's involvement in drug trafficking, and she even suggested that she had no firsthand knowledge regarding Barry Walker's drug trafficking activity. When Ms. King began offering testimony that differed in material respect to the information she provided in a statement she gave to police officers on May 31, 2007, King was impeached with her prior statement. Ms. King conceded that at the time of her statement, she told police that Barry Walker earned approximately $3,000 per week selling crack cocaine and that Barry Walker told her directly that he was trafficking in cocaine. (Tr. 209-10.) Ms. King also acknowledged that in a statement she gave on May 31, 2007, she informed police that Barry and Barron Walker worked together to sell cocaine throughout Harrisburg, and that they earned roughly $300 to $400 per night as the result of such drug trafficking. (Tr. 214.) The United States never sought to have Ms. King revise her testimony in Court to conform to the statement given to police; instead, the government used the prior statement only for impeachment purposes. Pursuant to defense counsel's request, the jury was properly instructed that Ms. King's answers to the questions regarding her prior statement could be considered only for their impeachment value and that they did not constitute substantive evidence.

[6] Rhoades's testimony also corroborated much of the testimony offered in support of the prosecution of the Hobbs Act robbery and related weapons counts, and this fact supports the

Rhoades, facing multiple drug and weapon charges following his arrest in 2006, began cooperating with law enforcement officers as an informant for the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives, and also for the Drug Enforcement Agency. In addition to testifying regarding Defendants' involvement in the May 31, 2007 robbery attempt, Rhoades testified that he had witnessed Barry and Barron Walker engage in a crack cocaine sale on State Street in Harrisburg, approximately two to three weeks prior to May 31, 2007. (Tr. 375-76.) Specifically, Rhoades testified that Barry Walker sold John McNeil between a quarter-ounce and an "eightball" of crack cocaine, and that Barry Walker carried a gun on his waistband during this transaction.[7] (Id.) Rhoades also testified that he observed an ounce and a half of crack cocaine on Barron Walker's lap during this transaction. (Id.) Rhoades testified that Defendants' sale to John McNeil took place on State Street, next to a school, and that the Walkers arrived for the sale in a black Ford Expedition. On re-direct examination, Rhoades maintained that he had observed Barry Walker deliver drugs to John McNeil while carrying a gun in his waistband, and that Barron Walker was present and in possession of a significant quantity of crack cocaine during this transaction. (Tr. 404-05.)

Rhoades was subject to significant cross-examination by defense counsel, in particular

---

Court's ultimate finding that the withheld information did not undermine confidence in the jury's verdict. This testimony is not discussed at any length in this memorandum, as Defendants' motion focuses solely on the first three counts of the indictment. Nevertheless, the Court notes that Rhoades's testimony touched nearly all of the crimes charged in the indictment, and that it corroborated much of the evidence provided by other witnesses.

[7] Rhoades, who was 23 years old at the time of trial and had been involved in drug trafficking since he was 15, explained that an "eightball" is 3.5 grams of crack cocaine. (Tr. 391, 407.) Rhoades testified that due to his experience selling drugs, he could visually calculate whether a quantity of crack cocaine constituted between a quarter ounce and an eightball. (Tr. 392.)

7

regarding his motivation for cooperating as an informant for the government. Rhoades acknowledged that he had been indicted federally in 2006 and charged with possession with intent to distribute five grams and more of crack cocaine, possession of a firearm in furtherance of drug trafficking, and possession of a firearm by a felon. (Tr. 377-79.) Although he testified that he did not know the exact number of years of incarceration he would have faced had he been found guilty and received a maximum penalty on all of the charged offenses, he testified that in exchange for cooperating with the government he agreed to plead guilty to being a felon-in-possession of a firearm and the government agreed to dismiss the charges for drug trafficking and use of a firearm in furtherance of drug trafficking. (Tr. 378-79.) Mr. Rhoades acknowledged that the presentence report prepared in his case recommended that he receive a sentence of between nine and ten years imprisonment, but he received a 63-month sentence in consideration for his assistance to the government, which amounted to roughly a two-thirds reduction in the total sentence he likely would have received under the sentencing guidelines.[8] (Tr. 382-83.) Rhoades also testified that he hoped to receive a still further reduction in his sentence if the government files a motion under Rule 35 of the Federal Rules of Criminal Procedure. (Tr. 383.)

In addition to challenging Rhoades's credibility on the grounds that his testimony was motivated entirely by his own self-interest, defense counsel attacked Rhoades's credibility in

---

[8] Notwithstanding the presentence report, the government and Defendants appear to agree that Rhoades could have received a sentence of 55 years had he received the maximum penalties available for all crimes originally charged, but that he would likely have received a sentence of approximately 15 years under the sentencing guidelines. Hence, by receiving a sentence of just over five years, Rhoades effectively reduced his potential sentence by two-thirds.

several other ways. For example, defense counsel suggested that Rhoades was lying when he told the jury that James Leaks and Barry Walker admitted to involvement in the Hobbs Act robbery while driving in his car because his efforts at recording this conversation failed and because the failed recording had not been maintained by law enforcement. (Tr. 399-401.) Counsel also questioned Rhoades on this aspect of his testimony, inquiring as to why either of these men would confide in him the details of the crime they had just committed, and suggesting that to admit the details of the crime to a non-participant seemed very unusual. (Id.) Counsel also raised the issue of Rhoades's use of numerous aliases, and the fact that during a police raid he knowingly provided a false name to officers. (Tr. 398-99.) Counsel also questioned Rhoades about his alleged involvement in committing armed robberies with John McNeil, at a time during which he was allegedly working as a government witness – an allegation that Rhoades flatly denied. (Tr. 401.)

In sum, counsel attacked Rhoades's veracity in a number of ways, made the jury fully aware of Rhoades's extensive history of drug trafficking, and his self-interested motivation in agreeing to testify against Defendants at trial and help convict them of very serious criminal charges. Because of this extensive cross-examination, the United States argues that its failure to produce information that Rhoades possessed suspected marijuana flakes and one or two small rocks of crack cocaine in an old coat found in his trunk at the time he arrived to engage in a controlled purchase was not material because it merely reflected cumulative impeachment evidence. Although the Court ultimately agrees that the suppressed information was not material for Brady purposes because it did not undermine confidence in the jury's verdict, the Court disagrees with the prosecution that the suppressed information was merely cumulative

9

impeachment evidence.

Defense counsel specifically asked Rhoades whether he had engaged in drug trafficking or drug use following his arrest in 2006, and Rhoades responded that he had not. (Tr. 412.) Rhoades was plainly testifying that he had "gone clean" following his arrest and indictment, and that he was working honestly as a cooperating informant from 2006 forward. Defense counsel was deprived of an opportunity to refute Rhoades's testimony on this point. The evidence that Rhoades arrived for a controlled purchase with law enforcement officers while in possession of some small quantity of drugs would have provided counsel with another opportunity to challenge his veracity, not so much due to his self-interest but because it might have suggested that Rhoades was being dishonest in <u>both</u> his testimony before the jury and in his work for the government as an informant. The information would also have given defense counsel an additional reason for suggesting that the government had been especially favorable to Rhoades by not pursuing any charges against him for possessing drugs while assisting law enforcement officers in other drug investigations. For these reasons, the Court does not find that the suppressed information was merely another instance of Rhoades's prior criminal activity that had already been explored by defense counsel on cross, but represented fresh evidence that Rhoades was an untrustworthy person.[9]

---

[9] The Court does not, however, find persuasive defense counsel's assertion that the information could have been used to suggest that Rhoades was continuing to traffic in cocaine or that he may have been using the extremely small quantity of drugs in order to frame another drug trafficker for his own benefit. (Doc. No. 234, at 8.) The suppressed information indicates that Rhoades's coat contained a very small quantity of cocaine base, and so small a quantity that it would be unreasonable to believe that the cocaine in his coat pocket could have been used to frame another drug trafficker, particularly where Rhoades was preparing to purchase an ounce or more of crack cocaine in the course of this controlled buy.

Nevertheless, the Court agrees with the government that even without the information, defense counsel was able to cross-examine Rhoades aggressively and meaningfully at trial regarding his truthfulness and his motivation to testify, and that the withheld evidence was ultimately not material for Brady purposes. In addition to Rhoades's own testimony, the government produced testimony from other witnesses supporting Defendants' conviction, particularly that of Jason McNeil, which corroborated much of Rhoades's testimony on the first three counts of the indictment.[10] The Court also finds that defense counsel effectively cross examined Rhoades and provided the jury with a multitude of reasons to disbelieve his testimony, and that the additional instance of Rhoades potentially engaging in unlawful and deceitful conduct was not reasonably probable to cause the jury to make a different finding regarding Defendants' guilt.[11] Upon consideration of the entire record of this case, the Court does not find that there was a "reasonable probability" of the jury reaching a different result with respect to the first three counts of the indictment, and the absence of the impeachment evidence does not undermine confidence in the jury's verdict. Accordingly, the Court finds that the withheld

---

[10] The Court disagrees with Defendants' assertion that "Skylar Rhoades was the sole witness against both the Walker brothers on the first three drug/gun counts of the indictment . . . ." (Doc. No. 234, at 11.) As noted, Carmillia King offered very limited testimony that Barry Walker sold cocaine, and James McNeil testified directly that he had witnessed both Barry and Barron Walker sell cocaine in the weeks prior to May 31, 2007. The Court does agree that only Skylar Rhoades testified that Defendants used a firearm in furtherance of this drug trafficking, though other witnesses offered substantial testimony regarding Defendants' access to and use of numerous firearms in connection with the attempted robbery of Edward Wright on May 31, 2007, which was intended to yield money and drugs that Defendants and their accomplices intended to divide among themselves and sell.

[11] Indeed, Skylar Rhoades was effectively cross examined by two highly skilled and experienced defense lawyers, both of whom provided commendable representation to their clients in this case.

information regarding Skylar Rhoades arriving to a controlled buy with a very small quantity of crack cocaine and suspected marijuana residue in a coat found in his trunk was not material for purposes of the <u>Brady</u> rule and a new trial is unwarranted. The motion will therefore be denied. An order consistent with this memorandum follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 1:07-CR-263 |
| v. | : | |
| | : | (Chief Judge Kane) |
| BARRON WALKER and | : | |
| BARRY WALKER | : | |

## **ORDER**

AND NOW, this 25th day of August 2009, upon consideration of Defendants' motion for a new trial (Doc. No. 223), and for the reasons set forth in the within memorandum, IT IS HEREBY ORDERED THAT the motion is DENIED.

        S/ Yvette Kane
        Yvette Kane, Chief Judge
        United States District Court
        Middle District of Pennsylvania